# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**JASON SCHWEBKE**, *an individual*,

    Plaintiff,

vs.    Case No: 21-cv
      Hon.
**UNITED WHOLESALE MORTGAGE,**    Mag.
**LLC d/b/a UWM**, *a Michigan corporation*,

    Defendant.

___

**DEBORAH GORDON LAW**
Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Molly Savage (P84472)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@debgordonlaw.com
emt@debgordonlaw.com
sthomas@debgordonlaw.com
msavage@debgordonlaw.com
_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jason Schwebke, by his attorneys Deborah Gordon Law, complains against Defendant as follows:

## JURISDICTION AND PARTIES

1. This is an action for failure to accommodate, discrimination, and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.*, and the Persons with Disabilities Civil Rights Act, MCL 37.1201 *et seq.*

2. Plaintiff Jason Schwebke ("Plaintiff") is a resident of Michigan and resides in the Eastern District of Michigan.

3. Defendant United Wholesale Mortgage d/b/a UWM ("Defendant") is corporation incorporated under the laws of the State of Michigan with its principal place of business in Pontiac, Michigan.

4. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C § 1367(a) as this matter is a civil action arising under the laws of the United States, and alleges state law claims that are so related that they form part of the same case or controversy.

5. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), as (1) Defendant resides in this district, and (2) a substantial part of the events giving rise to this matter occurred in this district.

## STATEMENT OF FACTS

6. Plaintiff has been deaf his entire life and is an American Sign Language user ("ASL"). On the hearing loss scale, Plaintiff is categorized as "severely deaf," meaning he can only hear very loud speech or environmental sounds such as a fire truck siren or door slamming. He is unable to engage in conversation without the use of ASL.

7. Plaintiff's disability substantially limits his daily life. He is unable to consume auditory news and entertainment unless the provider displays closed captioning. He is unable to receive public safety announcements at places such as airports and train stations.

8. Plaintiff has a bachelor's degree in information technology, as well as an associate's degree in information and computer studies. He has worked in the information technology field since 2011.

9. Plaintiff was hired as a software developer at UWM in September 2019.

10. UWM is the nation's top-ranked wholesale mortgage lending company, and brings in billions of dollars of net income each year.

11. Plaintiff's position required him to develop software through his participation in highly collaborative, regularly scheduled team meetings. Team meetings, ranging in size from 5-100 participants, occurred multiple times a week and brought together the disparate parts of the team's project to test and refine the software's capabilities.

12. Prior to his start-date, Plaintiff requested an accommodation for his disability. Specifically, Plaintiff requested the use of a sign language interpreter to be able to communicate with his co-workers, particularly during face-to-face or group meetings.

13. Plaintiff completed the necessary medical paperwork supplied by Defendant and submitted his documentation to Defendant on September 24, 2019.

14. Plaintiff began his orientation at UWM on September 30, 2019. He was provided an on-site sign language interpreter for his two-week long orientation.

15. Near the end of his orientation, Plaintiff was asked to meet with three of his supervisors. His supervisors asked about his need for an interpreter and directed the conversation towards discussion of "low-cost" communication technology as an alternative to an interpreter.

16. His supervisors asked Plaintiff to test out the low-cost alternatives. They agreed that interpreters would be involved in future meetings and told him to confirm with his Team Lead and Team Benefit Specialist before scheduling an on-site ASL interpreter.

17. Plaintiff was first asked to communicate in team meetings through an app called Ava. The app provides live-captioning, transcribing a speakers' words into text in real time on the user's smartphone screen.

18. Ava quickly proved to be unworkable in team meetings. The highly collaborative meetings, which were attended by 20 or more people, required Plaintiff to move around the conference room, holding the phone up to each speaker in order to understand what was being discussed. Moreover, the app did not give Plaintiff the capability to speak in the meetings. Ava provided Plaintiff only a largely incomplete, and often inaccurate, transcript of the meeting.

19. Plaintiff again sought the use of an on-site interpreter for team meetings. He was instructed by his supervisor not to request any service that incur invoice and

billing while leadership was considering his request because unauthorized requests may affect their decision-making process.

20. In order to attend meetings, Plaintiff had to rely on Video Relay Service ("VRS"). VRS is a free, video telecommunication service regulated by the Federal Communications Commission ("FCC") that allows deaf individuals to communicate over video telephones with hearing people in real-time through a sign language interpreter.

21. VRS is commonly used to facilitate phone calls between deaf and hearing people. The caller is routed to a sign language interpreter (known as a video interpreter, "VI"), who interprets the call via a webcam to the deaf user and vis-versa. For each call, the deaf user is randomly assigned to a VI, with varying degrees of experience in sign language interpretation.

22. To prevent misuse of this federally funded program, FCC rules prohibit deaf and hearing callers from being in the same room during a call. Thus, in order to make use of this low-cost communication technology, Plaintiff had to attend his many team meetings from his desk, segregated him from his team while they met in a conference room. The team would call into VRS via a conference room phone while Plaintiff watched the VI interpret the meeting into sign language from his computer.

23. Plaintiff's isolation was not only humiliating and degrading; it was also an ineffective alternative to providing an on-site interpreter. VRS would often freeze or glitch. The VI, and thus Plaintiff, had no way to identify which of the 20+ meeting

attendees was speaking and translation was muddled by overlapping conversations. Less experienced VIs had difficulty translating the highly technical words used by software developers.

24.  Throughout the fall of 2019, Plaintiff made a good faith effort to communicate with his team using the low-cost communication technologies suggested by his UWM supervisors.

25.  Sometime in October or November of 2019, Plaintiff approached his then-Team Leader, Michael Sanford about attending a Special Topics meeting with over 100 team member participants.

26.  Plaintiff requested an on-site interpreter for the meeting and Sanford verbally agreed that Plaintiff could schedule an interpreter to attend with him. This was the last time Plaintiff was provided an on-site interpreter in conjunction with his daily work.

27.  In December 2019, UWM hosted its extravagant annual holiday party for UWM employees at the TCF Center in Detroit, Michigan. Local media and business publications have reported on the annual party for many years, highlighting UWM's flashy giveaways and high-profile musical performances. UWM lauds the party as one of the reasons the company is voted one of the "Best Places to Work."

28.  The holiday party was scheduled to last well into the early morning hours. Due to the size of the event, UWM agreed to accommodate Plaintiff with an interpreter

for the night. However, citing costs, they only agreed to pay for an interpreter until 10 p.m.

29.     To put the failure to accommodate Plaintiff for the duration of the party into context, to celebrate the company's record breaking $106 billion year, UWM gave away 13 brand new Cadillacs and 30 cruises to the Bahamas. UWM booked Grammy Award winning group The Chainsmokers to perform at the event.

30.     In discussing the holiday party and the company's success, UWM CEO Mat Ishbia described the key to his company's record-breaking year: "Take care of people. Do right by your people. Focus on the culture and the team and you're going to end up winning."

31.     In January 2020, Plaintiff again requested accommodations from his supervisors, including Team Leader Barnabas Yang, and the Team Benefits Specialist Ann Marie Vitale, for an on-site interpreter for all face-to-face and group meetings. Defendant failed to accommodate this request.

32.     In a February 2020 meeting, Yang told Plaintiff that his performance was "stellar" and gave him a 2% salary increase.

33.     In March 2020, due to the COVID-19 pandemic, Plaintiff's team was assigned to work from home. Initially, his team facilitated work-from-home through the online service GoToMeeting. This was a high point for Plaintiff in his employment at UWM. GoToMeeting's teleconference feature on live video chats allowed him to use VRS to communicate in meetings in real time.

34. However, a few weeks later, UWM switched his team over to Microsoft Teams because more people were familiar with the program. Plaintiff requested as an accommodation that the team continue to use GoToMeeting because it enhanced his communication to such a large degree. His request was ignored. After the switch to Microsoft Teams, Plaintiff had to rely on closed captioning to communicate with his team.

35. On May 1, 2020, Plaintiff was terminated by UWM. No reason was provided in his termination letter.

36. Plaintiff received his right to sue letter from the EEOC on or around October 26, 2020.

## COUNT I
### FAILURE TO ACCOMMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, *et seq.*

37. Plaintiff repeats and realleges all foregoing paragraphs as if they were fully set forth herein.

38. Plaintiff is an employee under the ADA, as defined by 42 U.S.C. § 12111.

39. Defendant is a covered entity, as that term is used by 42 U.S.C. § 12112(a) and defined by 42 U.S.C. § 12111, as Defendant engages in industry affecting commerce with more than 15 employees.

40. Plaintiff is deaf. Plaintiff's deafness substantially limits his ability to hear, speak, and communicate as compared to the general population.

41. Plaintiff is disabled, as that term is defined by 42 U.S.C. § 12102. Plaintiff has a physical impairment that substantially limits one or more major life activity. Specifically, Plaintiff's physical impairment substantially limits his ability to hear, speak, and communicate.

42. Defendant knew of Plaintiff's disability.

43. At all times relevant, Plaintiff possessed the requisite education, skills, and experience necessary to perform the essential functions of his position at UWM.

44. Plaintiff was well qualified and able to perform the essential functions his position as a software developer with the assistance of reasonable accommodation of his physical impairment.

45. Plaintiff, on numerous occasions, requested that Defendant make modifications or adjustments to the work environment and the manner in which his position is customarily performed in order for him to perform the essential functions of his position.

46. Defendant failed to engage in the interactive process in good faith with Plaintiff to determine the appropriate accommodation.

47. Defendant violated the ADA by refusing to accommodate Plaintiff's known disability.

48. The accommodation sought by Plaintiff did not impose an unreasonable burden on Defendant.

49. Defendant's actions were intentional, with deliberate disregard for the rights and sensibilities of Plaintiff.

50. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to: loss of earnings and earning capacity, loss of career opportunities, loss of fringe benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, and loss of ordinary pleasures of everyday life, including the right to pursue gainful employment of his choice.

## COUNT II
### RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101, *et seq.*

51. Plaintiff repeats and realleges all foregoing paragraphs as if they are set forth fully herein.

52. Plaintiff is an employee under the ADA, as defined by 42 U.S.C. § 12111.

53. Defendant is a covered entity, as that term is used by 42 U.S.C. § 12112(a) and defined by 42 U.S.C. § 12111, as Defendant engages in industry affecting commerce with more than 15 employees.

54. Plaintiff is disabled, as that term is defined by 42 U.S.C. § 12102. Plaintiff has a physical impairment that substantially limits one or more major life activity. Specifically, Plaintiff's physical impairment substantially limits his ability to hear, speak, and communicate.

55. Defendant knew of Plaintiff's physical impairment.

56. Plaintiff engaged in protected activity under the ADA by repeatedly requesting a reasonable accommodation for his disability.

57. Defendant knew of Plaintiff's request for reasonable accommodation.

58. Defendant retaliated against Plaintiff for engaging in protected activity by terminating Plaintiff's employment with Defendant.

59. Defendant's actions were intentional and performed with deliberate disregard for the rights and sensibilities of Plaintiff.

60. As a direct and proximate result of Defendant's conduct of improperly retaliating against Plaintiff, Plaintiff has sustained injuries and damages including but not limited to: loss of earnings and earning capacity, loss of career opportunities, loss of fringe benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, and loss of ordinary pleasures of everyday life, including the right to pursue gainful employment of his choice.

## COUNT III
### DISCRIMINATION IN VIOLATION OF MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT ("MPDCRA"), MCL 37.1201 *et seq.*

61. Plaintiff repeats and realleges all foregoing paragraphs as if they were fully set forth herein.

62. All times relevant, Plaintiff was an employee and Defendant was his employer within the meaning of the MPDCRA, MCL 37.1201.

63. Plaintiff is deaf. Plaintiff's deafness substantially limits his ability to hear, speak, and communicate as compared to the general population.

64. Plaintiff has a disability, as that term is defined by MCL 37.1103. Plaintiff has a physical impairment that substantially limits one or more major life activity. Specifically, Plaintiff's physical impairment substantially limits his ability to hear, speak, and communicate. Plaintiff's disability is unrelated to his qualifications for employment or promotion.

65. Defendant knew of Plaintiff's disability.

66. At all times relevant, Plaintiff possessed the requisite education, skills, and experience necessary to perform the essential functions of his position at UWM.

67. Plaintiff was well qualified and able to perform the essential functions of his position as a software developer with the assistance of reasonable accommodation of his physical impairment.

68. Plaintiff, on numerous occasions, requested, in writing and verbally, that Defendant make modifications or adjustments to the work environment and the manner in which his position is customarily performed in order for him to perform the essential functions of his position.

69. Defendant failed to engage in the interactive process in good faith with Plaintiff to determine the appropriate accommodation.

70. Defendant violated the ADA by refusing to provide a reasonable accommodation to Plaintiff's known disability.

71. The accommodation sought by Plaintiff did not impose an undue hardship on Defendant.

72. Defendant's actions were intentional, with deliberate disregard for the rights and sensibilities of Plaintiff.

73. As a direct and proximate result of Defendant's wrongful acts, Plaintiff has sustained injuries and damages including but not limited to: loss of earnings and earning capacity, loss of career opportunities, loss of fringe benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, and loss of ordinary pleasures of everyday life, including the right to pursue gainful employment of his choice.

## COUNT IV
### RETALIATION IN VIOLATION OF THE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, MCL 37.1201 *et seq.*

74. Plaintiff repeats and realleges all foregoing paragraphs as if they were fully set forth herein.

75. All times relevant, Plaintiff was an employee and Defendant was his employer within the meaning of the MPDCRA, MCL 37.1201.

76. Plaintiff is deaf. Plaintiff's deafness substantially limits his ability to hear, speak, and communicate as compared to the general population.

77. Plaintiff has a disability, as that term is defined by MCL 37.1103. Plaintiff has a physical impairment that substantially limits one or more major life activity. Specifically, Plaintiff's physical impairment substantially limits his ability to hear, speak,

and communicate. Plaintiff's disability is unrelated to his qualifications for employment or promotion.

78. Defendant knew of Plaintiff's disability.

79. At all times relevant, Plaintiff possessed the requisite education, skills, and experience necessary to perform the essential functions of his position at UWM.

80. Plaintiff was well qualified and able to perform the essential functions of his position as a software developer with the assistance of reasonable accommodation of his physical impairment.

81. Plaintiff engaged in protected activity under the ADA by repeatedly requesting a reasonable accommodation for his disability.

82. Defendant knew of Plaintiff's request for reasonable accommodation.

83. Defendant retaliated against Plaintiff for engaging in protected activity by terminating Plaintiff's employment with Defendant.

84. Defendant's actions were intentional and performed with deliberate disregard for the rights and sensibilities of Plaintiff.

85. As a direct and proximate result of Defendant's conduct of improperly retaliating against Plaintiff, Plaintiff has sustained injuries and damages including but not limited to: loss of earnings and earning capacity, loss of career opportunities, loss of fringe benefits, mental anguish, physical and emotional distress, humiliation and embarrassment, loss of professional reputation, and loss of ordinary pleasures of everyday life, including the right to pursue gainful employment of his choice.

## RELIEF REQUESTED

Plaintiff demands judgment against the Defendant as follows:

A.  Legal relief:

   a. Compensatory, exemplary, liquidated, and punitive damages in whatever amount Plaintiff is found to be entitled;

   b. A judgment for lost wages and benefits, in whatever amount Plaintiff is found to be entitled;

   c. An award of interest, costs, reasonable attorney fees, and expert witness fees; and

   d. Whatever other legal relief appears appropriate at the time of final judgment.

B.  Equitable relief:

   a. An injunction prohibiting any further acts of wrongdoing or retaliation against Plaintiff;

   b. Declaratory relief stating that Defendant discriminated against Plaintiff in violation of federal law;

   c. An award of front pay;

   d. An award of interest, costs and reasonable attorney fees; and

   e. Whatever other equitable relief appears appropriate at the time of final judgment.

Dated: January 22, 2021         **DEBORAH GORDON LAW**
                                <u>/s/Deborah L. Gordon (P27058)</u>
                                Elizabeth Marzotto Taylor (P82061)
                                Sarah Gordon Thomas (P83935)

Molly Savage (P84472)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@debgordonlaw.com
emt@debgordonlaw.com
sthomas@debgordonlaw.com
msavage@debgordonlaw.com

## JURY DEMAND

Plaintiff Jason Schwebke, by and through his attorneys Deborah Gordon Law, demands a trial by jury of all the issues in this cause that are so triable.

Dated: January 22, 2021                **DEBORAH GORDON LAW**
                                       /s/Deborah L. Gordon (P27058)
                                       Elizabeth Marzotto Taylor (P82061)
                                       Sarah Gordon Thomas (P83935)
                                       Molly Savage (P84472)
                                       Attorneys for Plaintiff
                                       33 Bloomfield Hills Parkway, Suite 220
                                       Bloomfield Hills, Michigan 48304
                                       (248) 258-2500
                                       dgordon@debgordonlaw.com
                                       emt@debgordonlaw.com
                                       sthomas@debgordonlaw.com
                                       msavage@debgordonlaw.com