UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON SCHWEBKE,

    Plaintiff,

v.

    Case No.  21-10154
    HON. DENISE PAGE HOOD

UNITED WHOLESALE MORTGAGE,
LLC d/b/a UWM,

    Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS AND COMPEL ARBITRATION (ECF No. 17), DENYING AS MOOT MOTION TO EXTEND DISPOSITIVE MOTION DEADLINE (ECF No. 25) and SETTING HEARING DATE**

**I.  INTRODUCTION**

    This matter is before the Court on Defendant United Wholesale Mortgage's ("UWM's") August 30, 2021 Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration (ECF No. 17) and UWM's November 5, 2021 Motion to Extend Dispositive Motion Deadline (ECF No. 25).  A hearing was held on December 1, 2021.  For the reasons set forth below, UWM's motion to dismiss and compel arbitration is denied.

1

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Jason Schwebke ("Plaintiff"), formerly employed by UWM, filed suit on January 22, 2021 alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.* and the Persons with Disabilities Civil Rights Act ("PWDCA"), M.C.L. 37.1201 *et seq.*

The Complaint alleges as follow.  Plaintiff, severely deaf since birth, is unable to engage in conversation without the use of American Sign Language ("ASL"). *Complaint,* ¶ 6 (ECF No. 1, PageID.2).  In September 2019, he was hired as a software developer at UWM, a wholesale mortgage lending company. (*Id.*, PageID.3), ¶¶ 9-10.

On or about September 25, 2019, the parties entered into the following Employment Agreement ("Agreement"), which includes the following provision:

> ¶ 32 *Arbitration* If a material dispute arises under this Agreement, other than a breach by the Employee of Sections 8 and 12 through 26, inclusive, for which the Company shall be entitled to equitable relief, the parties shall submit such dispute to binding arbitration and such arbitration shall otherwise comply with and be governed by the provisions of the expedited employment arbitration rules of the American Arbitration Association; but if such rules are not then in effect, then by the Uniform Arbitration Act, being MCLA Section 600.5001, *et seq.* or any successor act. . . . The arbitrators' authority will be limited to determining whether the Company's action in terminating the Employee and/or the Agreement was unlawful under applicable federal, state and local statutory or common law.    BY SIGNING THIS AGREEMENT, EMPLOYEE ACKNOWLEDGES THAT HE OR SHE IS GIVING UP THE RIGHT TO A TRIAL IN A COURT OF LAW AS TO ANY DISCRIMINATION OR OTHER

STATUTORY CLAIMS, AND IS HEREBY AGREEING TO SUBMIT ALL SUCH CLAIMS TO BINDING ARBITRATION.

(ECF No. 17-1, PageID.225-226).

Plaintiff alleges that before starting work for UWM, he requested the use of a sign language interpreter to communicate with co-workers. *Complaint,* (ECF No. 1, PageID.3), ¶ 12. He was provided with an on-site sign language interpreter for his two-week orientation. (*Id.*, PageID.4), ¶ 14. Toward the end of the orientation, Plaintiff was asked to consider "low-cost" interpretation services as an alternative to a sign language interpreter. (*Id.*), ¶ 16. An app designed to provide captioning during live meetings was found to be unworkable; the program required Plaintiff to move around the conference room to hold up the phone to each speaker, the transcript was incomplete and inaccurate, and the accommodation did not give Plaintiff the ability to speak at meetings. (*Id.*), ¶ 18.

In response to his request for an on-site interpreter at team meetings, his supervisor instructed him not to request "any service that [would] incur [an] invoice ..." (*Id.*), ¶ 19. After the app was found to be unsatisfactory, Plaintiff was required to "attend" meetings using Video Relay Service ("VRS"), a federally funded video telephone service allowing deaf individuals to communicate with hearing people in real time. (*Id.*, PageID.5), ¶ 21. However, because the use of VRS is restricted to individuals not in the same room, Plaintiff was forced to attend team meetings from his desk while his colleagues met face-to-face in a conference room. (*Id.*), ¶ 22. In

3

addition to Plaintiff's segregation from his colleagues, VRS would "often freeze or glitch," preventing Plaintiff identifying the speakers. (*Id.*, PageID.5-6), ¶ 23. The translations were also "muddled" by overlapping conversations, and the VRS interpreters misinterpreted "highly technical words used by software developers." (*Id.*). Upon Plaintiff's request, his supervisor permitted an on-site interpreter for a "Special Topics" meeting held sometime in November 2019. (*Id.*, PageID.6), ¶¶ 25-26. In January 2020, Defendant failed to accommodate Plaintiff's request for an on-site interpreter for in-person group meetings. (*Id.*, PageID.7), ¶ 31. The following month, he received a "stellar" performance rating and was given a two percent salary increase. (*Id.*), ¶ 32.

In March 2020, Plaintiff's team was assigned to work from home due to the COVID-19 pandemic. (*Id.*), ¶ 33. Communication with colleagues was made through GoToMeeting which allowed Plaintiff to video chat using VRS. (*Id*). After a few weeks, UWM switched the communication program to Microsoft Teams requiring to Plaintiff to communicate through closed captioning only. (*Id.*, PageID.8), ¶ 34. His request to continue to use GoToMeeting was ignored. (*Id.*). On May 1, 2020, Plaintiff's employment was terminated by UWM. (*Id.*), ¶ 35. He seeks compensatory, exemplary, and punitive damages as well as costs and attorney fees.

### III. APPLICABLE LAW AND ANALYSIS

#### A. Applicable Law

The Federal Arbitration Act mandates that binding arbitration agreements in contracts "evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA broadly applies to any transaction directly or indirectly affecting interstate commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995). The "central" purpose of the FAA is to "ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts"); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343-45, 352 (2011) (class action waiver could not invalidate arbitration clause, and to require otherwise would frustrate Congressional purpose). Arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. There is a federal policy in favor of arbitration, but as the Supreme Court has clarified, that policy "is to make arbitration agreements as enforceable as other contracts, but not more so*." Morgan v. Sundance*, ––– U.S. –––

–, 142 S. Ct. 1708, 1713 (2022) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)) (internal marks omitted). Arbitration will not be required where the agreement's plain language "is not susceptible of an interpretation that covers the asserted dispute." *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO, Loc. Lodge 1943 v. AK Steel Corp.*, 615 F.3d 706, 711 (6th Cir. 2010) (citation omitted); *Total Quality Logistics, LLC v. Traffic Tech, Inc.*, No. 22-3148, 2023 WL 1777387, at *2 (6th Cir. Feb. 6, 2023).

In light of the strong federal policy favoring arbitration embodied in the FAA, parties must be compelled to arbitrate where: (1) a valid, enforceable agreement to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). Arbitration clauses will be enforced unless the party resisting arbitration can show that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000). The resisting party's burden is significant, as courts are required to "'rigorously enforce' arbitration agreements according to their terms," *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). *See also Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005).

### B. Analysis

UWM argues that under the Agreement signed by both parties, Plaintiff is required to submit his claims to arbitration under the FAA, which provides that "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of [same]" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (ECF No. 17, PageID.198-199)(citing 9 U.S.C. § 2). UWM contends that it has not waived its right to arbitrate by engaging in discovery. (*Id.*, PageID.205).

In response, Plaintiff argues that the arbitration clause in the Agreement is limited to determination of whether his termination was unlawful under applicable federal, state, or common law. (ECF No. 20, PageID.404). He also contends that UWM has waived its right to arbitrate by engaging in discovery for almost seven months and by failing to include its right to arbitration among the affirmative defenses in answer to the Complaint. (*Id.*, PageID.389-392). He claims that he would be prejudiced by being forced to arbitrate his claim due to the money and time already invested in litigation. (*Id.*, PageID.400). He argues that UWM gained a "strategic advantage" in engaging in discovery which would have been unavailable in arbitration. (*Id.*, PageID.403).

### 1. Whether Plaintiff's Claims under the ADA and PWDCRA are Within the Scope of the Arbitration Clause

The September 2019 Agreement reads in relevant part that "[i]f a material

dispute arises under this Agreement, other than a breach by the Employee of Sections 8 and 12 through 26, inclusive, for which the Company shall be entitled to equitable relief, the parties shall submit such dispute to binding arbitration . . ."[1] (ECF No. 17-1, PageID.225), § 32. The arbitration clause ends as follows: "BY SIGNING THIS AGREEMENT, EMPLOYEE ACKNOWLEDGES THAT HE OR SHE IS GIVING UP THE RIGHT TO A TRIAL IN A COURT OF LAW AS TO ANY DISCRIMINATION OR OTHER STATUTORY CLAIMS, AND IS HEREBY AGREEING TO SUMIT ALL SUCH CLAIMS TO BINDING ARBITRATION." (*Id.*, PageID.226)(all caps in original). Notwithstanding that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses, supra.*, 460 U.S. at 24-25, the language of the Agreement includes Plaintiff's statutory claims. "A district court's duty to enforce an arbitration agreement under the FAA is not diminished when a party bound by the agreement raises claims arising from statutory rights." *Stout v. J.D. Byrider*, 228 F.3d 709, 715, (6th Cir. 2000).

Plaintiff argues that the arbitration clause does not include his claims of failure to accommodate, discrimination, and retaliation, citing a portion of the arbitration clause stating that "the arbitrators' authority will be limited to determining whether the Company's action in terminating the Employee and/or the Agreement was unlawful under applicable federal, state and local statutory or common law." (ECF

---

[1] Sections 8 and 12 through 26 of the Agreement pertain to the employee's duty of loyalty, misuse of proprietary and confidential information, the ownership of intellectual property, non-competition, non-disparagement, and other issues unrelated to the present claims. (ECF No. 17-1).

No. 20, PageID.404) *citing* (ECF No. 17-1, PageID.226). This portion of the arbitration clause is arguably in dissonance with the beginning which states that parties would resolve any "material dispute" through arbitration and the closing: to resolve "any discrimination or other statutory claims" to binding arbitration.

Plaintiff's argument fails for two reasons. First, the sentence in question refers not only to the termination of employment but also termination of the Agreement. In other words, the arbitrator could consider whether one party or the other failed to abide by the terms of the Agreement or whether the Agreement was unlawfully altered or withdrawn altogether. Second, assuming that the "termination" portion of arbitration clause, by itself, could be read to restrict the arbitrator to deciding wrongful termination cases, it contradicts the opening and closing sections of the clause. It is well settled that "any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout,* 328 F.3 at 714; *Moses, supra,* 460 U.S. at 24-25.

### 2. Waiver of the Right to Arbitrate

Plaintiff contends that UWM has implicitly waived its right to arbitration. There is a strong federal policy in favor of arbitration. *Hurley v. Deutsche Bank Tr. Co. Americas*, 610 F.3d 334, 338 (6th Cir. 2010). In *O.J. Distrib., Inc. v. Hornell Brewing Co.,* 340 F.3d 345, 355 (6th Cir. 2003), the Sixth Circuit stated, "Because of the presumption in favor of arbitration under the Federal Arbitration Act, we will not lightly infer a party's waiver of its right to arbitration." (Quoting *Cotton v. Slone,* 4

F.3d 176, 179 (2d Cir.1993)). Given this strong federal policy, "a waiver of the right to arbitration is 'not to be lightly inferred' and the party seeking to prove waiver bears a heavy burden of proof." *Linglong Americas, Inc. v. Tire*, 2016 WL 2610264, at *2 (N.D. Ohio May 6, 2016), *aff'd sub nom. Linglong Americas, Inc. v. Horizon Tire, Inc.*, 666 F. App'x 445, 2016 WL 7010010 (6th Cir. December 1, 2016)(citing *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001), and *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991)).

"Waiver [ ] 'is the intentional relinquishment or abandonment of a known right.'" *Morgan*, 142 S. Ct. 1713 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). "The Supreme Court recently held 'prejudice is not a condition of finding that a party waived its right to compel arbitration under the Federal Arbitration Act.' There are now only two elements to determine if a party waives its contractual right to arbitration: 1) if the party knew of the right; and 2) acted inconsistently with that right.'" *Roman v. Jan-Pro Franchising Intl., Inc.*, 342 F.R.D. 274, 292 (N.D. Cal. 2022) (quoting *Morgan*, 142 S. Ct. at 1709). "If, before moving to compel arbitration, a party moves to dismiss on a key merits issue, then the party's action is inconsistent with the right to arbitrate." *Ibid.* (citing *Newirth ex rel. Newirth v. Aegis Senior Communities*, LLC, 931 F.3d 935, 942 (9th Cir. 2019) ("Aegis intentionally withdrew the motion and proceeded to take advantage of the federal forum by filing a motion to dismiss Newirth's arbitrable claims, with prejudice, for failure to state a claim.")). *Speerly v. Gen. Motors*, LLC, No. 19-

11044, 2023 WL 2572457 at *23 (E.D. Mich. Mar. 20, 2023).

As to knowledge of the right to arbitrate, UWM asserts that the employment agreement between the parties included a provision requiring that any dispute arising out of the agreement be resolved through arbitration. Both parties knew of the right to arbitrate.

Plaintiff argues that UWM has acted inconsistently with an intent to arbitrate by the following actions and inactions. UWM answered the complaint and pled affirmative defenses but did not raise the affirmative defense concerning the arbitration agreement; there was a delay of eight months between the filing of the complaint and UWM's motion to compel arbitration; and UWM's participation in extensive discovery. The Sixth Circuit held that even if one factor—for example, the failure to raise arbitration as an affirmative defense—is insufficient by itself to sustain a theory of waiver, it might combine with other factors to do so. "[R]egardless of whether each of these circumstances is insufficient to show that [the defendant] acted completely inconsistently with its right to arbitration, they may well be sufficient when considered together." *Id.*, 680 F.3d at 719. In *Johnson*, the following factors combined to demonstrate that the defendant's actions were "completely inconsistent" with an intent to arbitrate: the defendant did not raise arbitration as an affirmative defense; defendant filed its motion to compel arbitration eight months after the case began; defendant filed a counter-claim; defendant participated in

11

judicially supervised settlement discussions over a two-month period; when settlement discussion proved unsuccessful, defendant filed a motion to continue to trial and modify the case management order, which was denied; and defendant then engaged in extensive discovery, including interrogatories, requests for production of documents, requests for admission, noticing eight depositions, and producing a hard drive with 4.11 gigabytes of responsive information.

UWM's actions in this case are similar to those in *Johnson*, and the totality of the circumstances in this case is sufficient to sustain Plaintiff's "heavy burden" of showing waiver. First, as in *Johnson*, UWM did not raise arbitration as an affirmative defense. "Regardless of whether a defendant is required to raise arbitration as a defense under Rule 8(c), a defendant's failure to raise arbitration as an affirmative defense shows his intent to litigate rather than arbitrate." *Johnson*, 680 F.3d at 718. This factor weighs in favor of finding waiver but is not dispositive of the issue standing alone.

The time between the filing of the complaint and the UWM's motion to compel arbitration was slightly more than seven months. And the time between UWM's answer to the complaint (February 16, 2021) and its August 30, 2021 motion to compel—the more relevant time period in determining whether the delay is inconsistent with an intent to arbitrate—was approximately six and one-half months. *See Paxton v. Bluegreen Vacations Unlimited*, 2019 WL 7791889, at *6 (E.D. Tenn. Feb. 14, 2019)("For instance, in analyzing the issue, it would be unfair to count time

that passed between the Complaint's filling and service of process, or for that matter, the almost two months that passed between the Complaint's filing and Defendants' timely responsive pleadings."). The delay in cases where courts have found waiver have involved much longer time periods. *See e.g. Hurley*, (two years); *Gunn v. NPC Int'l Inc.*, 625 F. App'x 261 (6th Cir. 2015)(15 months); *Manasher v. NECC Telecom,* 310 F. App'x. 804 (6th Cir.2009)(almost one year); *Central Trust Co., N.A. v. Anemmostat Products Division*, 621 F. Supp. 44, 46 (S.D. Ohio 1985)(15 months); *Uwaydah v. Van Wert Cty. Hosp.*, 246 F. Supp. 2d 808 (N.D. Ohio 2002)(18 months); *American Locomotive Co. v. Chemical Research Corp.,* 171 F.2d 115 (6th Cir.1948)(seven years). The delay of six and one-half or seven months in the present case does not in itself weigh heavily in favor of finding waiver, but this is not to say that waiver can *never* be found where there is such a short delay. Rather, under the totality of the circumstances test of *Johnson*, the length of the delay must be considered in light of the defendant's level of participation in the litigation. Although the delay of seven months may not be considered lengthy, it is sufficient to show that UWM sat on its right to arbitrate during this time period, and coupled with participating in discovery as noted below, shows UWM waived its right to arbitration.

In *Johnson*, the defendant participated in two months of judicially supervised settlement discussions, filed a counter-claim, filed pretrial motions, and actively participated in discovery. In *Lerchen v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*

1987 WL 37285, at *1 (6th Cir. May 7, 1987), the Court found waiver where the defendant participated in a final pretrial conference, participated in the selection of a jury panel, brought a Motion in Limine for which the Court held an oral hearing, brought emergency motions to compel discovery, and was on notice that trial was imminent. In *Gibson Guitar Corp. v. Elderly Instruments, Inc.,* 2006 WL 3316971, at *2 (6th Cir. Nov. 14, 2006), waiver was found where defendant attended case management conferences, agreed to scheduling orders, filed counterclaims and motions, participated in substantial discovery, including the taking of depositions, and moved for summary judgment in its favor.

In the present case, UWM participated in discovery, both in terms of propounding its own discovery requests and responding to Plaintiff's discovery requests. Its own discovery requests prior to the motion to compel arbitration involved interrogatories, requests for production of documents, and request for Plaintiff's release of records, served on February 26, 2021 (10 days after UWM filed its answer to the complaint); subpoenas for Plaintiff's educational and employment records, issued on April 23, 2021; taking Plaintiff's deposition on July 30, 2021; and taking the deposition of a third-party witness on August 26, 2021.[2] The larger part of UWM's participation in discovery involved responding to the Plaintiff's own discovery requests, including producing witnesses for depositions noticed by Plaintiff.

---

[2] Plaintiff has submitted a chart detailing UWM's participation in discovery, with cross-references to exhibits and the Court's docket. *Plaintiff's Response*, ECF No. 20, PageID.385-387.

14

According to Plaintiff's own summary chart, UWM produced responses to Plaintiff's document requests on April 2, 2021, May 14, 2021, May 20, 2021, July 1, 2021, July 8, 2021, July 27, 2021, August 3, 2021, and August 24, 2021.

In addition, Plaintiff conducted depositions on witnesses he identified and requested on July 16, 2021, August 12, 2021, August 18, 2021, September 1, 2021, September 15, 2021, and September 20, 2021. (ECF No. 20, PageID.386-387). Plaintiff's discovery practice is not necessarily a yardstick to measure whether UWM's litigation activity is inconsistent with an intent to arbitrate. *See Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 206, (4th Cir. 2004)("We are unwilling to include activity that the moving party did not initiate in assessing that party's default")(citing *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th Cir. 1996)). However, UWM participated in Plaintiff's extensive discovery by serving responses and participating in the depositions.

While UWM failed to raise arbitration as an affirmative defense when it answered the complaint on February 16, 2021, it filed the present motion seven months after the complaint was filed. UWM did not assert arbitration in the parties' Joint Rule 26(f) report submitted to the Court. Although the bulk of its discovery practice involved responding to Plaintiff's requests, including producing witnesses that Plaintiff wished to depose, UMW participated in Plaintiff's discovery willingly, and served discovery on Plaintiff, including taking Plaintiff's deposition. On these facts,

the Court finds that Plaintiff has satisfied his substantial burden of showing that UMW has acted inconsistently with the arbitration agreement and waived arbitration. The Court need not address the prejudice factor or strategic advantage factor since the Supreme Court in *Morgan* requires only the two elements to determine waiver of a contractual right to arbitration: 1) both parties knew of the right to arbitrate; and 2) UWM acted inconsistently with that right.

## IV. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion to Dismiss Or, in the Alternative, to Stay Proceedings and Compel Arbitration (ECF No. 17) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Extend Dispositive Motion Deadline (ECF No. 25) is DENIED as MOOT, Defendant having filed its Motion for Summary Judgment.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 28) is set for a hearing on **June 27, 2023, 4:00 p.m.**

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

Dated: May 25, 2023